IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE E. SULLIVAN,<br><br>   Plaintiff,<br><br>   v.<br><br>KELLY SERVICES, INC. and DOES 1 TO 10, inclusive,<br><br>   Defendants.<br>_____/ | No. C 08-3893 CW<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT |

   This case concerns whether California law requires a temporary staffing agency to pay its employee for time and expenses relating to interviews with a staffing agency's customer. Defendant Kelly Services, Inc. and Plaintiff Catherine Sullivan filed cross motions for summary judgment. The motions were heard on September 3, 2009. Having considered all of the parties' papers and argument on the motions, the Court hereby grants Defendant's motion in part and grants Plaintiff's cross motion in part, concluding that Plaintiff should be compensated for the time she spent in her interviews, but not for her time preparing for and traveling to the interviews or

her commuting expenses.

## BACKGROUND

Defendant is a temporary staffing agency.  Stipulation of Facts (SOF) ¶ 1.  Defendant employs individuals, and then assigns those individuals to work in various settings.  Id.  Last year, Defendant assigned more than 750,000 employees in thirty-six countries.  Id.  Between 2004 and the present, approximately 150,000 employees completed temporary assignments in California for Defendant.  Id.  Approximately fifty percent of Defendant's customers require interviews prior to offering an assignment.  Eric Grover Decl., Exh. B at 27-28; Exh. F at 65.

On February 28, 2006, Plaintiff applied for employment with Defendant.  Id. ¶ 17.  On this date, Plaintiff signed the application for employment, which states:

> I understand that I may be offered employment with Kelly Services, Inc. ("Kelly") subject to my availability for work, Kelly's ability to find suitable positions for me, and the results of reference checking or other screening procedures.  My employment will begin on the first day of my first position . . . Kelly will pay me for my work while assigned to Kelly's customer . . . As a benefit to me, Kelly may offer me the opportunity to enhance my skills through training programs.  These programs do not constitute an offer, promise, or guarantee of future positions.  Training is strictly voluntary, and I may not be paid for time spent in training.

SOF, Exh. 1.

Plaintiff's employment relationship with Defendant began on March 16, 2006, which was her first day of her first temporary assignment with Defendant's customer, Managed Health Network. During her employment with Defendant, Plaintiff attended four interviews with three of Defendant's customers: Wells Fargo, CMP

2

Technologies,[1] and Animation Mentor.  Plaintiff was not paid for the time she spent preparing for, traveling to and from or attending the interviews.  SOF ¶ 31.  Plaintiff was also not reimbursed for travel and parking costs related to her attendance at the interviews.  Grover Decl., Exh. X at 367, 369-370, 377-78; Exh. Y at 386-87.  Defendant did not charge its customers for the time they spent interviewing Plaintiff.  SOF ¶¶ 20, 23, 30.

Before sending an employee on an interview, Defendant usually provides a customer with a copy of the employee's résumé.  If an employee does not have a résumé, Defendant will help the employee construct one.  Eric Grover Decl., Exh. F at 129, 145.  Defendant edits every résumé that is sent to a customer by adding Defendant's logo and contact information, and removing the employee's personal contact information.  The employee is not permitted to submit the résumé directly to the customer.  Defendant controls the process this way because, as one of Defendant's staffing supervisors testified, Defendant "really doesn't want the customer to contact the employee.  We want the customer to come through us to talk to us about those employees, and we pretty much relay the information to the employee."  Grover Decl. Exh. T at 260.

Defendant also tightly oversees the interview process. Defendant prohibits employees from communicating directly with the customer outside of the actual interview.  Defendant sets the date, time and place of the interview.  If an employee is going to be late for an interview, the employee must call Defendant, not the

---

[1] On February 29, 2008, CMP Technologies became United Business Media, LLC.

3

customer.  Defendant will then call the customer to notify it of the delay.

After an interview, Defendant obtains feedback on the interview from the customer and the employee.  If an employee does not choose to participate in this feedback process, Defendant will likely attempt to place a different employee in the assignment.  Grove Decl., Exh. F at 86.  If Defendant receives negative feedback about the employee from a customer after an interview, Defendant's staffing supervisor will counsel that employee.  If both the customer and an employee agree to an assignment, Defendant may place the employee with the customer.  SOF ¶¶ 15-16.  When a customer offers an assignment to Defendant, Defendant, not the employee, negotiates the salary and assignment terms.  Id. ¶ 7.

Defendant's staffing employees' performance is evaluated, in part, on their ability successfully to place employees with customers.  Id., Exh. W at 335-37.  The staffing employees have an incentive to ensure that Defendant's employees prepare for and do well at interviews because they want to place them in assignments and generate revenue for Defendant.  Id., Exh. F at 75, 98-103, 107-110.  Every interview that an employee attends is an opportunity for Defendant to show off its "product" and make a good impression.  Id. at 91-92, 98; Exh. T at 261-63; Exh. W at 361-62.[2]

Prior to filing this action, on April 20, 2007, Plaintiff filed a class action complaint alleging Defendant violated

---

[2] To the extent the Court relied upon evidence to which Plaintiff objected, the objections are overruled.  To the extent the Court did not rely on such evidence, Plaintiff's objections are overruled as moot.

4

California Labor Code §§ 201 and 202 by failing immediately to pay all wages due at the end of each temporary assignment. Sullivan v. Kelly Services, Inc., C 07-2874.  Instead of paying Plaintiff's wages immediately after her temporary assignment ended, Defendant paid her wages in accord with its routine schedule.  On November 12, 2008, the Court granted Defendant's motion for summary judgment, concluding that Defendant did not "discharge" Plaintiff within the meaning of § 201 and, therefore, Plaintiff was not entitled to immediate payment of wages.  The Court held that "after Plaintiff's last day of work with MHN, Plaintiff remained an active Kelly employee by going on multiple job interviews for other temporary assignments."  Order at 7.  The Court based its holding, in part, on Defendant's assertions that Plaintiff "understood that her employment relationship with Kelly remained ongoing through individual temporary employee assignments and persisted until she resigned or Kelly terminated the relationship."  Defendant's Motion for Summary Judgment in 2007 Case at 1-2.  Defendant also claimed that "unless either Kelly or the employee affirmatively acts to terminate the employment relationship, an individual remains a Kelly employee even if they are not actively working at a customer location."  Id. at 3-4; see also Defendant's Reply in Support of Its Motion for Summary Judgment in 2007 Case at 2 ("Plaintiff remained employed following the end of her temporary assignment.").

On August 14, 2008, Plaintiff filed this action against Defendant on behalf of herself and a proposed class of Defendant's employees in California.  Plaintiff alleges that Defendant (1) failed to pay her minimum wage for the time she spent

5

attending, preparing for and traveling to and from interviews with Defendant's customers in violation of California Labor Code §§ 1194 and 203, (2) failed to reimburse her for business expenses incurred in connection with these interviews in violation of Labor Code § 2802, (3) issued inaccurate wage statements in violation of Labor Code § 226 and (4) committed unfair and unlawful business practices under California Business & Professions Code §§ 1722 et seq.[3]

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment

---

[3] The Court takes judicial notice of the court and state agency documents filed by both parties.

6

are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

DISCUSSION

I. Compensable time

"The Industrial Welfare Commission (IWC) is the state agency empowered to formulate regulations (known as wage orders) governing employment in the State of California." Morillion v. Royal Packing Co., 22 Cal. 4th 575, 581 (2000). The IWC minimum wage order, 8 C.C.R. § 11000, applies to all employees in California, except outside salespersons, and requires that employees in California receive at least the designated minimum wage for all hours worked. "Hours worked" is defined as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." 8 C.C.R. § 11040(2)(K). The two phrases -- "time during which an employee is subject to the control of an employer" and "time the employee is suffered or permitted to work, whether or not required to do so" are "independent factors, each of which defines whether certain time spent is compensable as 'hours worked.'" Morillion, 22 Cal. 4th at 582.

Plaintiff argues that she was both under Defendant's "control" and "suffered or permitted to work" during the time related to customer interviews. The Court agrees with respect to the time Plaintiff spent interviewing, but not with respect to the time spent preparing for and traveling to and from the interviews.

7

### A. Control

The level of an employer's control over its employee's activities is a fact-specific determination. See e.g., Madera Police Officers Assn. v. City of Madera, 36 Cal. 3d 403, 411 (1984). Courts must examine the employer's "restrictions cumulatively to assess their overall effect" on an employee's time. Id. California courts have found that an employee was subject to the employer's control in a variety of circumstances. In Bono Enterprises, Inc. v. Bradshaw, 32 Cal. App. 4th 968, 975 (1995), the court of appeal held, "When an employer directs, commands or restrains an employee from leaving the work place during his or her lunch hour and thus prevents the employee from using the time effectively for his or her own purposes, that employee remains subject to the employer's control." In Aguilar v. Association for Retarded Citizens, 234 Cal. App. 3d 21, 30 (1991), the court of appeal held that the time an employer required personal attendant employees to spend at its premises, even when they were allowed to sleep, should be considered "hours worked."

In the present case, Plaintiff was subject to Defendant's control during the time she attended the customer interviews. Defendant controls all communications with its customers regarding potential assignments for temporary employees, outside of the interview itself. Defendant decides which of its temporary employees to send on an interview. Defendant then sends the customer a résumé with Defendant's name on it. Defendant removes the temporary employee's contact information from the résumé and replaces it with its own to ensure that its customers can only

contact it about the placement.  Further, Defendant arranges the interview and restricts a temporary employee's communication with the customer so that only Defendant can arrange the time, place and date of the interview.  If a temporary employee is running late to an interview, he or she must contact Defendant to relay that information to the customer.  After interviews, Defendant controls all follow-up communication with the customer.  Employees are not allowed to have any direct communication with the customer about the interview, salary or any terms of a possible assignment offer.

Defendant argues that Plaintiff was not subject to Defendant's control because attending the interviews was "voluntary."  If an employee does not want to attend an interview, that employee is still eligible for assignment with other customers that do not require placement interviews.  This argument has no merit.  In essence, the interviews are "voluntary" only to the extent that employees are willing to forego the types of jobs that require an interview.  That amounts to approximately fifty percent of the jobs Defendant offers.  Refusing to attend interviews would preclude Plaintiff from working these assignments.

Defendant also argues that Division of Labor Standards Enforcement (DLSE) Opinion Letter 1997.12.24 stands for the proposition that temporary employees are not entitled to compensation for work performed outside the context of a customer assignment.  Defendant's reliance on the opinion letter is misplaced.  Nothing in the letter addresses compensability of work performed for the temporary employment agency itself.

Defendant's reliance on out-of-circuit cases is also

9

misplaced. Those cases stand for the proposition that interviews by independent job applicants (non-temporary workers) for new employment are not compensable. See Kroll v. Home Depot USA, Inc., 2003 WL 23332905 (S.D. Ga.); Appeal of Town of Bedford, 142 N.H. 637 (1998). Defendant's role in the interview process differs significantly from the common interview situation during which individuals independently schedule and attend interviews with a new prospective employer on their own behalf.

In sum, Defendant exerted a high level of control over Plaintiff's interviews with Defendant's customers. Therefore, Plaintiff's time spent interviewing with Defendant's customers was compensable hours worked.

However, Plaintiff's time spent traveling to and from the interviews is not compensable. Morillion is controlling on this issue. In Morillion, the California Supreme Court emphasized that the "level of the employer's control over its employees, rather than the mere fact that the employer requires the employees' activity, is determinative." Id. at 587. The court held that

> plaintiffs' compulsory travel time, which includes the time they spent waiting for Royal's buses to begin transporting them, was compensable. Royal required plaintiffs to meet at the departure points at a certain time to ride its buses to work, and it prohibited them from using their own cars, subjecting them to verbal warnings and lost wages if they did so. By direct[ing] and command[ing] plaintiffs to travel between the designated departure points and the fields on its buses, Royal controlled them within the meaning of "hours worked."

Morillion, 22 Cal. 4th at 587 (internal quotations omitted). The court noted that the employees "were foreclosed from numerous activities in which they might otherwise engage if they were

10

permitted to travel to the [work site] by their own transportation." Id. at 586. For example, they could not drop off their children at school, stop for breakfast, or run other errands requiring the use of a car. The defendant "determin[ed] when, where, and how [its employees] must travel." Id. The court also concluded that "the time [the employees] spent commuting from home to the departure points and back again is not" compensable. Id. at 587; see also Rutti v. Lojack Corp., __F.3d__, 2009 WL 2568661, at *6 (9th Cir.).

Unlike the plaintiffs in Morillion, Plaintiff in the present case was permitted to travel to and from work in her own vehicle and could "effectively use [her] travel time for [her] own purposes." Morillion, 22 Cal. 4th at 586. Defendant did not control the manner in which Plaintiff traveled to and from the interviews. Her commute time is not compensable.

Similarly, Plaintiff's time spent preparing for and debriefing with Defendant after the interviews is not compensable. Time spent on these activities merely made Plaintiff a better applicant, and these activities were not controlled by Defendant in the same manner as the actual interview.

B. Suffered or Permitted to Work

Plaintiff's interview time also constitutes compensable time under the "suffered or permitted to work, whether or not required to do so" test. Morillion, 22 Cal. 4th at 582. In Morillion, the court held that this phrase "encompasses a meaning distinct from merely 'working.'" Id. at 585. The words "suffer" and "permit" as used in the statute mean "with knowledge of the employer." Id.

11

Thus, an employee is "suffered or permitted to work" when the employer knows or should know that the work is being performed. Id. Unauthorized and unrequested work may be compensable under this definition. Id. (citing as an example "unauthorized overtime, which the employer has not requested or required.").

Here, Defendant knew Plaintiff spent time interviewing with the customers because Defendant arranged the interviews, directed her how to prepare for the interviews, and debriefed her following the interviews. Defendant also admits that these interviews are an opportunity to market its staffing services to the customers with whom Plaintiff interviewed.

Defendant argues that time spent in interviews between assignments cannot be compensable hours worked because Plaintiff was not employed by Defendant during that time. Defendant points to the signed agreement that states, "Kelly will pay me for my work while assigned to Kelly's customer." SOF, Exh. 1. However, in Plaintiff's 2007 case against Defendant, it asserted that Plaintiff remained its employee during the time between assignments. Defendant made this argument so that it could avoid liability for not paying Plaintiff her wages immediately at the termination of each assignment.[4] Plaintiff was suffered or permitted to work during the time she interviewed with Defendant's customers. Defendant cannot now change course and deny that Plaintiff was its employee between assignments.

---

[4] The Court deems Defendant's factual statements contained in its briefs in the 2007 case to be judicial admissions. Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 227 (9th Cir. 1998).

12

C. Primary Benefit

Defendant argues that Plaintiff should not be compensated for her time spent interviewing because she, not Defendant, received the primary benefit from this activity. However, "primary benefit" is not an element of the "hours worked" analysis required in this case. The "primary benefit" analysis is used to determine compensable time under federal law. Although federal wage law can serve as persuasive authority, it is not relevant when the federal law addressed is less protective of employees' rights than the California law. Armenta v. Osmose, Inc., 135 Cal. App. 4th 314, 322-23 (2005); Bell v. Farmers Ins. Exchange, 87 Cal. App. 4th 805, 817 (2001). In a 1994 opinion letter, the DLSE noted that the "primary benefit" test under federal law is more restrictive than the definition of "hours worked" under California's IWC Wage Orders. See Grover Decl. Ex BB at 439-440 (DLSE Opinion Letter 1994.02.03-3). The California Supreme Court cited this DLSE letter with approval, noting that the DLSE's interpretation of "hours worked" articulated in the letter was consistent with its own independent analysis of "hours worked." Morillion, 22 Cal. 4th at 584. Therefore, the cases Defendant cites, which are based on the more restrictive federal law, are inapposite.

Accordingly, Defendant is required to pay Plaintiff at least minimum wage for all hours worked interviewing with customers. See Cal. Lab. Code §§ 1194, 1197; 8 C.C.R. § 11000. However, Defendant need not compensate her for time spent preparing for, traveling to and from, and debriefing with Defendant after the interviews. The Court grants in part Plaintiff's motion for summary judgment on her

13

§ 1194 claim.

II. Labor Code §§ 203, 226 and 2802; Business & Professions Code § 17200

An employer is liable for Labor Code § 203 penalties when it willfully fails to pay all wages due upon the employee's termination. "The term 'willful' within the meaning of section 203, means the employer intentionally failed or refused to perform an act which was required to be done." Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc., 102 Cal. App. 4th 765, 781 (2002) (internal quotation marks and citations omitted).

Labor Code § 226 requires that employers provide employees with itemized wage statements showing total hours worked. Subsection (e) of section 226 provides that "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer" to provide an itemized wage statement showing total hours worked is entitled to recover a penalty plus costs and attorney's fees.

Defendant does not dispute that, upon termination, it did not pay Plaintiff wages for the hours worked while attending interviews with Defendant's customers. Although the Court concludes that this time is compensable, Plaintiff has not submitted evidence that Defendant knowingly and intentionally failed to provide her with accurate itemized wage statements. Defendant did not believe that these activities were compensable in the first place. Therefore, the Court denies Plaintiff summary judgment on her §§ 203 and 226

14

claims.

Under California law, an employer is required to reimburse all reasonable costs incurred by employees in relation to their duties. Labor Code § 2802 provides, "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." The test for recovery under section 2802 is whether the relevant conduct was within the course and scope of employment. Jacobus v. Krambo Corp., 78 Cal. App. 4th 1096, 1101 (2000). Here Defendant does not dispute that Plaintiff incurred mileage costs, bridge tolls and parking costs in connection with her attendance at customer interviews. However, because the Court concludes that time spent traveling to and from these interviews is not compensable, these expenses were not incurred within the scope of her employment. See id. Accordingly, the Court denies Plaintiff summary judgment on her § 2802 claim.

Failing to pay an individual for all hours worked is an unfair and unlawful business practice in violation of § 17200. Cortez v. Purolator Air Filtration Products Co., 23 Cal. 4th 163, 177 (2000) ("Payment of wages unlawfully withheld from an employee [is] a restitutionary remedy authorized by section 17203."). Here, the earned wages that are due and payable pursuant to § 1194 are the property of Plaintiff who has given her labor to Defendant. Id. at 178. Accordingly, the Court grants Plaintiff's motion for summary

15

judgment on her § 17200 claim.

## CONCLUSION

For the foregoing reasons, the Court grants in part Defendant's motion for summary judgment and grants in part Plaintiff's cross motion for summary judgment (Docket No. 29). The Court grants in part Plaintiff's motion for summary judgment on her Labor Code § 1194 and Business and Professions Code § 17200 claims. The Court denies summary judgment on Plaintiff's §§ 203, 226 and 2802 claims. As noted at the hearing on the summary judgment motions, Plaintiff's motion for class certification is due January 14, 2010; Defendant's opposition is due February 4, 2010; and Plaintiff's reply is due February 18, 2010. The motion will be taken under submission on the papers. A further case management conference will be held on April 27, 2010.

IT IS SO ORDERED.

Dated: 10/16/09

CLAUDIA WILKEN
United States District Judge