IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE E. SULLIVAN,<br><br>    Plaintiff,<br><br>  v.<br><br>KELLY SERVICES, INC. and DOES 1 TO 10, inclusive,<br><br>    Defendants.<br>_____/ | No. C 08-3893 CW<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION |

    This case concerns whether California law requires a temporary staffing agency to pay its employee for time and expenses relating to interviews with a staffing agency's customer. On October 16, 2009, the Court decided the parties' cross motions for summary judgment and concluded that Plaintiff Catherine Sullivan should be compensated for the time she spent in her interviews, but not for her time preparing for and traveling to the interviews or her commuting expenses. Now before the Court is Plaintiff's motion for class certification. Defendant Kelly Services opposes the motion. Having considered all of the parties papers, the Court hereby

grants Plaintiff's motion.[1]

## BACKGROUND

Defendant is a temporary staffing agency. Stipulation of Facts (SOF)[2] ¶ 1. Defendant employs individuals, and then assigns those individuals to work in various settings. Id. Last year, Defendant assigned more than 750,000 employees in thirty-six countries. Id. Between 2004 and the present, approximately 150,000 employees completed temporary assignments in California for Defendant. Id. Approximately fifty percent of Defendant's customers require interviews prior to offering an assignment. Eric Grover Decl., Exh. B at 27-28; Exh. F. At 65.[3]

On February 28, 2006, Plaintiff applied for employment with Defendant. SOF ¶ 17.

Plaintiff's employment relationship with Defendant officially began on March 16, 2006, which was her first day of her first

---

[1] The Court overrules Defendant's objection to the evidence Plaintiff submitted with her reply brief. The evidence submitted was in response to arguments Defendant raised in its opposition. The Court overrules Defendant's objection to the expert declaration of William Lepowsky. At the class certification stage of the proceedings, "robust gatekeeping" of expert evidence is not required; rather, the Court must assess only whether expert evidence is useful in evaluating whether class certification requirements have been met. In re Static Random Access Memory Antitrust Litig., 2009 WL 4263524, at *13 (N.D. Cal.); Kurihara v. Best Buy Co., 2007 WL 2501698, at *5 (N.D. Cal.). The Court concludes that Lepowsky's opinions are reliable and admissible at the class certification stage. Accordingly, the Court denies as moot Plaintiff's motion for leave to file a response to Defendant's objections.

[2] The SOF was submitted with the summary judgment moving papers.

[3] Unless otherwise noted, the declarations this order cites were filed in connection with the summary judgment motions.

2

temporary assignment with Defendant's customer, Managed Health Network.  During her employment with Defendant, Plaintiff attended four interviews with three of Defendant's customers: Wells Fargo, CMP Technologies,[4] and Animation Mentor.  Plaintiff was not paid for the time she spent preparing for, traveling to and from or attending the interviews.  SOF ¶ 31.  Plaintiff was also not reimbursed for travel and parking costs related to her attendance at the interviews.  Grover Decl., Exh. X at 367, 369-370, 377-78; Exh. Y at 386-87.  Defendant did not charge its customers for the time they spent interviewing Plaintiff.  SOF ¶¶ 20, 23, 30.

Before sending an employee on an interview, Defendant usually provides a customer with a copy of the employee's résumé.  If an employee does not have a résumé, Defendant helps the employee construct one.  Eric Grover Decl., Exh. F at 129, 145.  Defendant edits every résumé that is sent to a customer by removing the employee's personal contact information and sometimes adding Defendant's logo and contact information.  The employee is not permitted to submit the résumé directly to the customer.  Defendant controls the process this way because, as one of Defendant's staffing supervisors testified, Defendant "really doesn't want the customer to contact the employee.  We want the customer to come through us to talk to us about those employees, and we pretty much relay the information to the employee."  Grover Decl. Exh. T at 260.

Defendant also tightly oversees the interview process.

---

[4] On February 29, 2008, CMP Technologies became United Business Media, LLC.

3

1  Defendant prohibits employees from communicating directly with the
2  customer outside of the actual interview.  Defendant sets the date,
3  time and place of the interview.  If an employee is going to be
4  late for an interview, the employee must call Defendant, not the
5  customer.  Defendant then calls the customer to notify it of the
6  delay.
7      After an interview, Defendant obtains feedback on the
8  interview from the customer and the employee.  If an employee does
9  not choose to participate in this feedback process, Defendant will
10 likely attempt to place a different employee in the assignment.
11 Grove Decl., Exh. F at 86.  If Defendant receives negative feedback
12 about the employee from a customer after an interview, Defendant's
13 staffing supervisor counsels that employee.  If both the customer
14 and an employee agree to an assignment, Defendant may place the
15 employee with the customer.  SOF ¶¶ 15-16.  When a customer offers
16 an assignment to Defendant, Defendant, not the employee, negotiates
17 the salary and assignment terms.  Id. ¶ 7.
18     Defendant's staffing employees' performance is evaluated, in
19 part, on their ability successfully to place employees with
20 customers.  Id., Exh. W at 335-37.  The staffing employees have an
21 incentive to ensure that Defendant's employees prepare for and do
22 well at interviews because they want to place them in assignments
23 and generate revenue for Defendant.  Id., Exh. F at 75, 98-103,
24 107-110.  Every interview that an employee attends is an
25 opportunity for Defendant to show off its "product" and make a good
26 impression.  Id. at 91-92, 98; Exh. T at 261-63; Exh. W at 361-62.
27     Prior to filing this action, on April 20, 2007, Plaintiff
28

4

filed a class action complaint alleging Defendant violated California Labor Code §§ 201 and 202 by failing immediately to pay all wages due at the end of each temporary assignment. <u>Sullivan v. Kelly Services, Inc.</u>, C 07-2874 CW (N.D. Cal.). Instead of paying Plaintiff's wages immediately after her temporary assignment ended, Defendant paid her wages in accord with its routine schedule. On November 12, 2008, the Court granted Defendant's motion for summary judgment, concluding that Defendant did not "discharge" Plaintiff within the meaning of § 201 and, therefore, Plaintiff was not entitled to immediate payment of wages.[5] The Court held that "after Plaintiff's last day of work with MHN, Plaintiff remained an active Kelly employee by going on multiple job interviews for other temporary assignments." Order at 7. The Court based its holding, in part, on Defendant's assertions that Plaintiff "understood that her employment relationship with Kelly remained ongoing through individual temporary employee assignments and persisted until she resigned or Kelly terminated the relationship." Defendant's Motion for Summary Judgment in C 07-2874 at 1-2. Defendant also claimed that "unless either Kelly or the employee affirmatively acts to terminate the employment relationship, an individual remains a Kelly employee even if they are not actively working at a customer location." <u>Id.</u> at 3-4; <u>see also</u> Defendant's Reply in Support of Its Motion for Summary Judgment in C 07-2874 at 2 ("Plaintiff remained employed following the end of her temporary assignment.").

---

[5]The Court grants Plaintiff's request to take judicial notice of the Court's November 12, 2008 Order Granting Defendant's Motion for Summary Judgment in C-07-2748 and Defendant's September 25, 2008 Motion for Summary Judgment filed in the instant case.

On August 14, 2008, Plaintiff filed this action against Defendant on behalf of herself and a proposed class of Defendant's employees in California. Plaintiff alleges that Defendant (1) failed to pay her minimum wage for the time she spent attending, preparing for and traveling to and from interviews with Defendant's customers in violation of California Labor Code §§ 1194 and 203, (2) failed to reimburse her for business expenses incurred in connection with these interviews in violation of Labor Code § 2802, (3) issued inaccurate wage statements in violation of Labor Code § 226 and (4) committed unfair and unlawful business practices under California Business & Professions Code §§ 1722 et seq.

On October 16, 2009, the Court granted Plaintiff's summary judgment motion in this case on her claims under Labor Code § 1194 and Business and Professions Code §§ 17200 et seq. for the time she spent attending interviews with Kelly customers. The Court concluded that Plaintiff was subject to Defendant's control when she attended interviews with Defendant's customers, based on Defendant's practices and policies regarding the interview process. The Court also held that the interview time was compensable under the "suffered or permitted to work" test because Defendant knew or should have known that work was being performed when she attending the interviews. The Court granted Defendant's summary judgment motion on Plaintiff's Labor Code § 2802 expense claim. The Court denied Plaintiff's motion for summary judgment as to the remaining claims pertaining to violations of Labor Code §§ 201-203 and 206.

Plaintiff seeks certification of the following class:
All individuals who were or are employed by Kelly Services,

6

```
     Inc. as a temporary employee within the State of California
     at any time between August 14, 2004 and the date the trial
     commences in this action, and who attended at least one
     interview with a Kelly consumer.
```

Motion at 14. Plaintiff defines "temporary employee" as a person "who worked at least one day on an assignment with a Kelly customer within Kelly's commercial or non-commercial divisions." Id. at 1 n.3. Plaintiff also seeks to certify a sub-class of class members who are no longer employed by Defendant.

## LEGAL STANDARD

Plaintiffs seeking to represent a class must satisfy the threshold requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b). Rule 23(a) provides that a case is appropriate for certification as a class action if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b) further provides that a case may be certified as a class action only if one of the following is true:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

>     (B) adjudications with respect to individual class
>         members that, as a practical matter, would be
>         dispositive of the interests of the other members
>         not parties to the individual adjudications or would
>         substantially impair or impede their ability to
>         protect their interests;
>
> (2) the party opposing the class has acted or refused to
>     act on grounds that apply generally to the class, so that
>     final injunctive relief or corresponding declaratory
>     relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact
>     common to class members predominate over any questions
>     affecting only individual members, and that a class
>     action is superior to other available methods for fairly
>     and efficiently adjudicating the controversy. The
>     matters pertinent to these findings include:
>
>     (A) the class members' interests in individually
>         controlling the prosecution or defense of separate
>         actions;
>
>     (B) the extent and nature of any litigation
>         concerning the controversy already begun by or
>         against class members;
>
>     (C) the desirability or undesirability of
>         concentrating the litigation of the claims in the
>         particular forum; and
>
>     (D) the likely difficulties in managing a class
>         action.

Fed. R. Civ. P. 23(b). Plaintiffs assert that this case qualifies for class certification under subdivisions (b)(3).

A plaintiff seeking class certification bears the burden of demonstrating that each element of Rule 23 is satisfied, and a district court may certify a class only if it determines that the plaintiff has borne its burden. <u>General Tel. Co. v. Falcon</u>, 457 U.S. 147, 158-61 (1982); <u>Doninger v. Pac. Nw. Bell, Inc.</u>, 564 F.2d 1304, 1308 (9th Cir. 1977). In making this determination, the court may not consider the merits of the plaintiff's claims. <u>Burkhalter Travel Agency v. MacFarms Int'l, Inc.</u>, 141 F.R.D. 144,

8

152 (N.D. Cal. 1991). Rather, the court must take the substantive allegations of the complaint as true. Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975). Nevertheless, the court need not accept conclusory or generic allegations regarding the suitability of the litigation for resolution through class action. Burkhalter, 141 F.R.D. at 152. In addition, the court may consider supplemental evidentiary submissions of the parties. In re Methionine Antitrust Litig., 204 F.R.D. 161, 163 (N.D. Cal. 2001); see also Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983) (noting that "some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a)"; however, "it is improper to advance a decision on the merits at the class certification stage"). Ultimately, it is in the district court's discretion whether a class should be certified. Molski v. Gleich, 318 F.3d 937, 946 (9th Cir. 2003); Burkhalter, 141 F.R.D. at 152.

DISCUSSION

I. Ascertainable Class

Defendant first argues that class certification must be denied because the identity of the class members is not objectively ascertainable. "An adequate class definition specifies 'a distinct group of plaintiffs whose members [can] be identified with particularity.'" Campbell v. PricewaterhouseCoopers, LLP, 253 F.R.D. 586, 593 (E.D. Cal. 2008) (quoting Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978). "The identity of class members must be ascertainable by reference to objective criteria." 5 James W. Moore, Moore's Federal Practice,

9

§ 23.21[1] (2001). Thus, a class definition is sufficient if the description of the class is "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998).

Here, the class definition meets this standard. The definition of the class is relatively straightforward. Class members must (1) be employed[6] by Defendant during a specific period of time and (2) have attended at least one interview with one of Defendant's customers. This definition is not subjective or imprecise. Defendant keeps records of most of its employees who attend customer interviews. As for any class members who cannot be identified through Defendant's records, Plaintiff's definition provides objective criteria by which prospective plaintiffs can identify themselves as class members.

II. Rule 23(a) Requirements

A. Numerosity

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)). See also 1 Alba Cone & Herbert B. Newberg, Newberg on Class Actions § 3.3 (4th ed. 2002) (where "the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is

---

[6] "[A]n individual is a Kelly 'employee' after completing the first day of his or her first assignment with a Kelly customer and continues to be a Kelly employee between assignments." Motion at 2 n.2; SOF ¶ 11; October 16, 2009 Summary Judgment Order at 16:12-24.

10

satisfied"). Plaintiff estimates that the class size is approximately 75,000 based on the fact that Defendant employed 150,000 temporary employees during the class period and at least fifty percent of Defendant's customers require interviews. Although 75,000 may not be an entirely accurate estimate, the Court is satisfied that the estimate is not so far off the mark to defeat numerosity. If the class turns out to be smaller than legally required under Rule 23(a)(1), Defendant may move to decertify it.

B. Commonality

Rule 23 contains two related commonality provisions. Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(b)(3), in turn, requires that such common questions predominate over individual ones.

The Ninth Circuit has explained that Rule 23(a)(2) does not preclude class certification if fewer than all questions of law or fact are common to the class:

> The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3). Indeed, Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

Rule 23(b)(3), in contrast, requires not just that some common questions exist, but that those common questions <u>predominate</u>. In Hanlon, the Ninth Circuit discussed the relationship between Rule 23(a)(2) and Rule 23(b)(3):

11

> The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3). In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.

Id. at 1022 (citations and internal quotation marks omitted).

Although Defendant asserts that this case does not satisfy Rule 23(a)'s commonality provision, its arguments actually focus on whether common issues predominate, and thus are more appropriately directed at the issue of certification under Rule 23(b)(3), discussed below. Rule 23(a) only requires that there be some common issues of fact and law. The class members' claims clearly have something in common: all class members are or were Defendant's employees and have attended at least one customer interview while employed; and their claims are based on common theories of liability. Rule 23(a)'s commonality requirement has therefore been satisfied.

C.   Typicality

The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members

12

1  have been injured by the same course of conduct." Hanon v.
2  Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (quoting
3  Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).  "Under
4  the rule's permissive standards, representative claims are
5  'typical' if they are reasonably co-extensive with those of absent
6  class members; they need not be substantially identical." Hanlon,
7  150 F.3d at 1020.  Class certification is inappropriate, however,
8  "where a putative class representative is subject to unique
9  defenses which threaten to become the focus of the litigation."
10 Hanon, 976 F.2d at 508 (quoting Gary Plastic Packaging Corp. v.
11 Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d
12 Cir. 1990), cert. denied, 498 U.S. 1025 (1991)).
13      Defendant argues that Plaintiff fails to satisfy the
14 typicality requirement because the class is not ascertainable and
15 the circumstances surrounding class members' interviews vary
16 tremendously.  However, Plaintiff has shown that she and the
17 putative class members were allegedly injured by the same course of
18 conduct, Defendant's uniform practices and procedures regarding
19 interviews with Defendant's customers.  Further, Plaintiff and all
20 class members seek the same relief.  The Court finds that
21 Plaintiff's claims are typical of the putative class members'
22 claims.
23      D.   Adequacy
24      Rule 23(a)(4) requires that "the representative parties will
25 fairly and adequately protect the interests of the class."  Fed. R.
26 Civ. P. 23(a)(4).  Defendant does not dispute Plaintiff's assertion
27 that this action satisfies the adequacy requirement and the Court

13

finds that it does.

III. Class Certification Under Rule 23(b)(3)

    A.   Predominance

Plaintiff's motion for certification under Rule 23(b)(3) centers around the issue of predominance. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." Hanlon, 150 F.3d at 1022 (internal quotation marks omitted). "The common issues must only predominate; they do not have to be dispositive of the litigation." In re Lorazepam & Clorazepate Antitrust Litig., 202 F.R.D. 12, 29 (D.D.C. 2001).

To determine whether the predominance requirement is satisfied, "courts must identify the issues involved in the case and determine which are subject to 'generalized proof,' and which must be the subject of individualized proof." In re Dynamic Random Access Memory (DRAM) Antitrust Litig., 2006 WL 1530166, at *6 (N.D. Cal.).

Defendant argues that common issues do not predominate because the "control test" used to determine whether class members must be compensated for their time spent interviewing requires a fact-specific analysis to assess the level of Defendant's control over each class member. See e.g., Madera Police Officers Ass'n v. City

14

of Madera, 36 Cal. 3d 403, 411 (1984). However, a fact-specific inquiry does not necessarily prevent common issues from predominating. Under the control test, courts must examine the employer's "restrictions cumulatively to assess their overall effect" on an employee's time. Id. Contrary to Defendant's assertion, uniform corporate practices and policies that cumulatively impact the class in a particular manner can satisfy the predominance requirement.

Defendant relies on inapposite overtime cases in which an employer's liability was based on whether class members engaged in duties during the work day that would make them exempt from overtime pay. See In re Wells Fargo Home Mortg. Overtime Pay Litig. (Wells I), 571 F.3d 953, 959 (9th Cir. 2009); Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 946 (9th Cir. 2009); In re Wells Fargo Home Mortg. Overtime Pay Litig. (Wells II), 2010 WL 174329, at **6-7 (N.D. Cal.). In these cases, the courts held that predominance cannot be based solely on an employer's blanket exemption policy but that other uniform corporate policies could satisfy Rule 23(b)(3). In Vinole, the Ninth Circuit noted that a focus on "whether the employer exercised some level of centralized control in the form of standardized hierarchy, standardized corporate policies and procedures governing employees, uniform training programs, and other factors susceptible to common proof" could satisfy the predominance requirement. Vinole, 571 F.3d at 946; see also Wells I, 571 F.3d at 959 (facing a "fact-intensive inquiry" regarding application of overtime exemption, the court noted, "A centralized policy requiring employees to be at their

15

desks for 80% of their workday would change this individual issue into a common one."); Wells II, 2010 WL 174329, at **6-7 (in exemption case, predominance can be shown by "some form of common proof, such as a standard policy governing how and where employees perform their jobs."). Here, Defendant's liability is based on its uniform corporate practices and policies regarding the interview process, which subjected temporary employees to Defendant's control during the interviews. Unlike the employees seeking overtime pay in Wells I, Wells II and Vinole, Plaintiff in the instant case has presented evidence of common proof that will resolve the question of whether class members were subject to Defendant's control when attending interviews.

Additionally, common issues predominate as to the "suffered or permitted to work" test. Plaintiff has established that she can prove, through common proof, that Defendant knew or should have known that work was being performed by temporary employees when they attended interviews. There is common evidence that Defendant's practice was to arrange the interviews between its customers and the temporary employees and control the manner in which the customers and temporary employees communicated both before and after the interviews.

Defendant argues that class certification should be denied because Plaintiff has not submitted a viable trial plan for proceeding as a class action. The Court disagrees. Nothing in Rule 23 requires Plaintiff to submit a formal trial plan along with her motion for class certification. See Chamerlan v. Ford Motor Co., 402 F.3d 952, 961 n.4 (9th Cir. 2005) ("Nothing in the

16

1  Advisory Committee Notes suggests grafting a requirement for a
2  trial plan onto the rule."). Moreover, Plaintiff has submitted a
3  viable method for managing this case as a class action. As noted
4  above, common proof can be used to determine Defendant's liability.
5  Further, Plaintiff plans to use statistical evidence, including
6  surveys or representative testimony, or both, of class members to
7  determine damages at trial. This type of evidence is commonly
8  accepted by courts for calculating damages in large class actions.
9  See e.g., Alvarez v. IBP, Inc., 339 F.3d 894, 901, 914-15 (9th Cir.
10 2003); In re Estate of Marcos Human Rights Litig., 910 F. Supp.
11 1460, 1464-65, 1469 (D. Haw. 1995); Bell v. Farmers Ins. Exchange,
12 115 Cal. App. 4th 715, 747-755 (2004).

13    In sum, Plaintiff has carried her burden to prove that common
14 questions of law and fact will predominate in this case.[7]

15    B.   Superiority

16    Rule 23(b)(3) also requires that class resolution must be
17 "superior to other available methods for the fair and efficient
18 adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The
19 policy at the very core of the class action mechanism is to

---

[7] Many of Defendant's arguments regarding predominance are misguided because they attack whether an individual could be a class member, not whether common issues predominate. For instance, Defendant asserts that its control over the interviews is subject to numerous factors, including the fact that many of its employees are not required to interview with customers. Employees that do not interview with customers simply do not fall within the class definition. Similarly, Defendant argues that some customers interview employees on their own, with no involvement by Defendant, until after the interview has occurred. After the interview has occurred and the customer decides to hire the employee, the customer contacts Defendant. In those situations, Defendant merely acts "as the 'payroll agent' for the employee." Opp. at 10. Those interviewees could not be class members either.

17

overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." Amchem, 521 U.S. at 617. The small amount of money at issue in each individual case makes it highly unlikely that individual litigation would be undertaken, but a class action would offer those with small claims the opportunity for meaningful redress. Therefore, certifying the class is superior to, and more manageable than, any other procedure available for the treatment of factual and legal issues raised by Plaintiff's claims.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for class certification (Docket No. 51). The Court denies as moot Plaintiff's motion to file a response to Defendant's objections.

IT IS SO ORDERED.

Dated: 04/27/10

CLAUDIA WILKEN
United States District Judge

18